[Cite as *State v. Barrett*, 2012-Ohio-3948.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97614**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# STEVEN BARRETT

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551162

**BEFORE:** Stewart, P.J., Cooney, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 30, 2012

**ATTORNEY FOR APPELLANT**

Eric C. Nemecek
Friedman & Frey, L.L.C.
1304 West 6th Street
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Jesse W. Canonico
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶1} A grand jury returned a 20-count indictment against defendant-appellant Steven Barrett charging him with illegal use of a minor in nudity-oriented material or performance, voyeurism, and possessing criminal tools. In lieu of trial, Barrett pleaded guilty to nine counts of illegal use of a minor in nudity-oriented material or performance, two counts of voyeurism, and one count of possession of criminal tools. The court sentenced him to seven years on each of the child pornography counts, six months in jail on the voyeurism counts, and 11 months on the possession of criminal tools counts. All of the counts were ordered to be served concurrently for a total term of seven years. In this appeal, Barrett complains that the court erred by failing to consider whether the child pornography counts were allied offenses of similar import that the court should have merged for sentencing, that the court abused its discretion by ordering a seven-year term for each of the child pornography counts, and that the court erred by failing to consider the statutory factors guiding the court's discretion in sentencing by placing emphasis on Barrett's punishment over his rehabilitation.

I

{¶2} In his first assignment of error, Barrett does not argue that the nine child pornography counts were allied offenses of similar import. Instead, he argues that even though he did not raise the issue of allied offenses at sentencing, the court should have nevertheless considered the matter on its own initiative. He asserts that, because "the

counts at issue involve the same statute and subsection, it is *possible* that the same conduct could establish a violation of each offense." (Emphasis added.) Appellant's Brief at 11. While acknowledging that he pleaded guilty to an indictment that contained different dates for the offenses, Barrett argues that the dates used in the indictment "do not provide an accurate indication as to when Appellant actually received, viewed or possessed the [material]." He asks that we vacate his sentence and remand the matter for a determination of whether the child pornography counts were allied offenses of similar import that should have merged for sentencing.

{¶3} When a defendant's conduct results in the commission of two or more "allied" offenses of similar import, that conduct can be charged separately, but the defendant can be convicted and sentenced for only one offense. R.C. 2941.25(A). Offenses are "allied" and must be merged for sentencing if the defendant's conduct is such that a single act could lead to the commission of separately defined offenses, but those separate offenses were committed with a state of mind to commit only one act. *See State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48-50.

{¶4} Despite filing an extensive sentencing memorandum, Barrett did not raise the issue of allied offenses at sentencing. He has forfeited all but plain error as defined by Crim.R. 52(B), which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A reviewing court will take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804

(1978), syllabus. To qualify as "plain," the error must be "obvious" from the record on appeal. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16.

{¶5} Barrett's convictions resulted from a guilty plea that constituted "a complete admission of [his] guilt." Crim.R. 11(B)(1). That guilt was based on the facts alleged in the indictment. *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), paragraph one of the syllabus. Because Barrett's guilty plea terminated the proceedings against him, the facts alleged in the indictment and admitted by Barrett are the only facts in the record.

{¶6} The state alleged in nine different counts of the indictment that Barrett "did recklessly create, direct, produce or transfer material or performance that shows a minor in a state of nudity in violation of Section 2907.232 of the Revised Code." Three separate dates were stated for the nine counts: July 26, 2009 for one count; September 15, 2009 for five counts; and April 12, 2011 for three counts. The images forming the basis of each count are not in the record.

{¶7} In his sentencing memorandum, Barrett stated that he had "images" depicting minors in a state of nudity. The plural form of the word "images" and the multiple counts of possessing child pornography indicate that more than one picture was involved. But beyond that, the record on appeal is empty. To the extent that the multiple images depicted different victims, we have held that they do not merge. *State v. Collier*, 8th Dist. No. 95572, 2011-Ohio-2791, ¶ 12. However, as the dissent notes, the images are not in the record on appeal, so we have no way of knowing what these images depict. It is possible that the images depict different victims, or may depict the same victim in different

poses, or may even be duplicates of a single image. In short, the record on appeal gives us no basis for saying whether the child pornography counts were allied.

**{¶8}** Given the lack of facts in the record on appeal, we cannot find that the court committed error, much less the kind of error that is so "obvious" on the record that it qualifies as plain error, by failing to inquire prior to sentencing whether separate counts of an indictment are allied offenses of similar import. *State v. Snuffer*, 8th Dist. Nos. 96480, 96481, 96482, 96483, 2011-Ohio-6430, ¶ 9; *State v. Lindsey*, 8th Dist. No. 96601, 2010-Ohio-804, ¶ 13; *State v. Rogers*, 8th Dist. Nos. 97093 and 97094, 2012-Ohio-2496.

**{¶9}** Some panels of this court have reached a different conclusion on similar facts: notably *State v. Corrao*, 8th Dist. No. 95167, 2011-Ohio-2517, and *State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833. In both cases, the panels considered issues of plain error in the failure to merge allied offenses following a guilty plea. And in both cases, the panels acknowledged the absence of facts supporting an allied offenses claim: in *Baker*, the panel stated "[t]he record is nearly devoid of any facts[;]" *id.* at ¶ 2; in *Corrao*, the panel stated, "[i]t is impossible to determine whether any of the * * * offenses were committed in 'a single act with a single state of mind.'" *Id.* at ¶ 10. Nevertheless, both panels found that the trial court's failure to conduct an allied offenses analysis was plain error. The cases were reversed and remanded with instructions for the respective trial courts to resolve the allied offenses issues raised on appeal.

**{¶10}** Our disagreement with *Baker* and *Corrao* is with the decision to reverse a sentence on the basis of plain error when the records in both cases admittedly did not

contain any evidence from which an allied offenses error might be determined. This is a departure from the well-established principle of appellate review that requires the appellant to exemplify the error by reference to the record on appeal. *See* App.R. 12(A)(2); *State v. Stojetz*, 84 Ohio St.3d 452, 455, 1999-Ohio-464, 705 N.E.2d 329. What is more, to the extent that appellate review requires the application of the plain error doctrine, it is an oxymoron to find plain error because there are insufficient facts in the record necessary to determine whether error occurred at all. If we cannot determine whether error exists because of the absence of facts in the record on appeal, it follows that there is no plain error that is "obvious."

{¶11} *Baker* found that the trial court's failure in the first instance to inquire into allied offenses prior to imposing sentence was itself plain error. This conclusion followed from several premises. First, allied offenses issues invoke the Double Jeopardy Clause of the Fifth Amendment to United States Constitution, *Johnson* at ¶ 25, and constitutional errors cannot be waived unless the waiver is knowing or intelligent. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 32. Second, *Underwood* held that "imposition of multiple sentences for allied offenses of similar import is plain error." *Id.* at ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96-102. Third, *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, stated, "[u]nder R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct." *Id.* at ¶ 47. From these principles, *Baker* and *Corrao* appear to conclude that the court not only has a duty to merge allied offenses of

similar import, but that it also has the obligation to raise the issue of allied offenses at sentencing, even if the defendant fails to do so.

{¶12} *Baker* and *Corrao* misapprehend the extent to which *Underwood* and *Johnson* apply to guilty pleas in which there are no facts or concessions demonstrating the existence of allied offenses. Beginning with *Johnson*, the facts of that case show that Johnson was found guilty by a jury verdict following a trial. The facts produced at trial would have enabled the court to determine whether Johnson's offenses were committed by the same conduct. The holding in *Johnson* is consistent with the R.C. 2941.25(A) prohibition against sentencing a defendant twice for the same conduct because the court could "construe" the evidence. But unlike a trial, a guilty plea is made to an indictment. *Johnson* cannot apply to guilty pleas because there are no facts that the court could construe as showing whether offenses are allied.

{¶13} *Underwood* concerned a no contest plea. On direct appeal, the state conceded that Underwood's offenses were allied offenses of similar import. *Id.* at ¶ 8. Given that concession, we have distinguished *Underwood* from cases in which we have held that, by voluntarily entering guilty pleas to two separate offenses, a "defendant waive[s] any argument that the same constituted allied offenses of similar import." *State v. Antenori*, 8th Dist. No. 90580, 2008-Ohio-5987, ¶ 6. In *State v. Wulff*, 8th Dist. No. 94087, 2011-Ohio-700, we explained the distinction between *Underwood* and *Antenori* as follows:

> Underwood pled no contest to all four counts for which he was indicted. On appeal, the State in *Underwood*, conceded that the convictions were in fact

allied offenses of similar import. Whereas, in *Antenori* and the instant case, a plea bargain was entered involving pleas to just some charges and no such concession by the State exists. Moreover, *Underwood* applies to an appellate review of a *jointly recommended* sentence, as opposed to sentences like those in *Antenori* and the instant case, which were imposed by the trial court after the defendant pled guilty to just some of the charges he faced. (Emphasis sic.) *Id.* at ¶ 25.

{¶14} The dissent claims that we have "play[ed] the *Antenori* card," claiming that *Antenori* is invalid precedent because it is an "anomaly" that is in conflict with *Underwood*. This is a curious statement because *Antenori* was also followed by *State v. Clementson*, 8th Dist. No. 94230, 2011-Ohio-1798, a decision written by the dissenting judge in an application for reopening. *Clementson* stated:

> Likewise, Clementson entered separate guilty pleas to four of eight charges, the parties did *not* jointly recommend a sentence to the trial court, and the state did not concede that the charges were allied offenses. This court decided *Antenori* in 2008, and Clementson's case was briefed, argued, and decided in 2009-2010. In light of *Antenori*, therefore, Clementson has not met his burden to demonstrate that there is a genuine issue of a colorable claim of the ineffective assistance of appellate counsel [for not assigning as error the trial court's failure to determine whether offenses were allied]. (Emphasis in original.)

*Clementson* at ¶ 13.

{¶15} Far from being an anomaly, *Antenori* is, and continues to be, viable precedent in this district. If by "play[ing] the *Antenori* card" the dissent means that we are not disregarding the precedential significance of the case, then guilty as charged.

{¶16} We can also distinguish *Underwood* because it was decided under the former allied offenses law stated in *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699. *Rance* required a "comparison of the statutory elements in the abstract" to

determine whether the statutory elements of crimes correspond to such a degree that the commission of one crime will result in the commission of the other. Unlike the new allied offenses standard in *Johnson* that requires a court to consider a defendant's conduct, under *Rance*, the court could not consider the facts giving rise to each offense. A court reviewing an allied offenses claim under *Rance* did not need any facts on appeal to determine whether offenses were allied. The Supreme Court's decision in *Underwood* could thus be made on a bare record. For that reason, *Underwood* has no applicability to a guilty plea made in the *Johnson* era of allied offenses law.

{¶17} Applying cases like *Underwood* and *Johnson*, where facts or a concession exists to find plain error in the failure to merge allied offenses of similar import, to cases involving only bare guilty pleas is pointless. If there are insufficient facts on the record to determine whether plain error occurred, a reviewing court simply cannot find any error at all. *Baker* and *Corrao* incorrectly assume that an allied offenses error exists because the record fails to show that one does not. This conclusion is a departure from well-established rules of appellate review.

{¶18} The holdings in *Baker* and *Corrao* take the extraordinary step of declaring that the court's failure to sua sponte raise the issue of allied offenses at sentencing from a guilty plea amounts to plain error. In fact, those cases arguably institute a form of per se error because they believe a bare record makes it impossible for an appellate court to determine whether offenses are allied and thus protect a defendant's right not to be

sentenced twice for the same offense. They do this on the basis of the following language from *Underwood*:

> When the plea agreement is silent on the issue of allied offenses of similar import, however, the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense.

*Underwood* at ¶ 29.

{¶19} This passage lends no support to the proposition that the court must sua sponte review whether offenses are allied. The supreme court made it clear that a trial judge is required to merge allied offenses of similar import "when the issue of allied offenses *is before the court*[.]" (Emphasis added.) *Id.* at ¶ 27. For example, in *Johnson*, there were demonstrable facts in the record to show that the allied offenses issue was before the court — the sentencing judge presided over trial and heard the evidence, so the judge had facts at hand to determine whether individual counts were allied offenses of similar import even without an express request to do so.

{¶20} *Johnson* stands for the proposition that a judge who presides over trial and hears evidence showing that multiple offenses are allied must merge those offenses even if the defendant does not request merger. And in *Underwood*, the supreme court was able to determine that Underwood's sentence was imposed in violation of R.C. 2941.25(A) because the state conceded on appeal that the underlying offenses were allied offenses of similar import. As in *Johnson* where the trial court had a factual record to indicate that offenses were allied, the concession in *Underwood* that the offenses should have merged

was enough to allow the court to conclude that the defendant had been sentenced in violation of R.C. 2941.25(A).

{¶21} Barrett's case is different because the allied offenses issue was never before the court. He pleaded guilty to the indictment in exchange for having some charges dismissed, he did not have any discussion or reach an agreement with the state on whether any of the remaining counts were allied, and further failed to raise the issue of allied offenses at sentencing. Barrett essentially concedes this point by arguing only that there is the "possibility" that his sentences might be subject to merger. An appellate court cannot find plain error on the mere possibility that error occurred. *See, e.g.*, *State v. Sanders*, 92 Ohio St.3d 245, 264, 2001-Ohio-189, 750 N.E.2d 90 (finding that "the possibility of jury confusion * * * does not reach the level of plain error."); *State v. Kelley*, 57 Ohio St.3d 127, 130, 566 N.E.2d 658 (1991) (criticizing court of appeals for finding that "the possibility that appealable errors occurred at trial constituted plain error and negated appellee's plea of guilty to the lesser included offense for which he was ultimately sentenced.") There is nothing in the record that would indicate that the offenses Barrett pleaded guilty to were allied.

{¶22} This case is more like *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990), in which the supreme court found an allied offenses issue forfeited on appeal because the defendant did not raise it in the trial court. Implicit in the idea of issue forfeiture in the context of allied offenses is that a party who fails to object waives all but plain error. *See State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶

139 (argument that state failed to prove separate animus for separate offenses was not raised at trial and defendant "thus waived all but plain error.").

**{¶23}** The supreme court did not mention *Comen* in either *Underwood* or *Johnson*. But it has not overruled *Comen* or the long line of precedent finding an allied offenses argument forfeited on appeal because it was not raised at the time of sentencing and the defendant failed to show the existence of plain error. Although seemingly at odds, *Comen*, *Underwood*, and *Johnson* can be reconciled: the *Comen* line of cases ultimately rests on the absence of plain error; in *Underwood* and *Johnson* there were either facts or a concession showing that plain error occured at sentencing. The present case is like *Comen* because the lack of any facts or a concession on the issue of allied offenses makes it impossible to determine if plain error occurred.

**{¶24}** The approach advocated by *Baker* and *Corrao* essentially makes allied offenses an issue whenever a defendant pleads guilty to multiple offenses, regardless of whether those offenses might colorably be allied. The difficulty with this approach is that it puts a greater burden on the trial judge to advocate for a defendant's rights than on defense counsel. In criminal cases that terminate by plea agreement, the court usually has no involvement apart from taking the plea and sentencing. It is unclear why the sentencing judge, who would presumably have less knowledge of the facts than defense counsel, should have the obligation to raise the issue of allied offenses in the first instance when defense counsel has failed to do so. To be sure, the court has an affirmative duty to advise a defendant of the consequences of *waiving* constitutional rights; for example,

guilty pleas, speedy trial, or jury waiver. But we have never required the court to act as second-chair to defense counsel to point out possible errors in trial tactics that might result in the defendant's *forfeiture* of rights on appeal. If defense counsel fails to preserve error for appeal, that issue should be the basis of an ineffective assistance of counsel claim in postconviction proceedings.

{¶25} The better practice is that a defendant who pleads guilty to multiple offenses must take the initiative and not only raise the matter of allied offenses at the time of the plea or at sentencing, but also take steps to ensure that the record contains the information necessary to demonstrate a claimed error on appeal. While we have made it clear that allied offenses are a sentencing issue, *Snuffer*, *supra,* at ¶ 10, defense counsel should raise potential allied offenses as part of the plea bargain. Of course, the parties to a plea bargain cannot decide on a sentence — that is the court's prerogative. *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6. But the parties can certainly reach an agreement on whether offenses might merge for sentencing and state on the record why they believe that the offenses should merge for sentencing. In fact, the state represented during oral argument in this case that it is now addressing potential allied offenses at the bargaining stage. If the court were to reject a recommendation that allied offenses merge, a record would exist to review the trial court's decision.

{¶26} The absence of any facts in the record demonstrating that the counts to which Barrett pleaded guilty should merge as allied offenses rules out any finding of plain error. We overrule this assignment of error.

## II

{¶27} Barrett next argues that the court abused its discretion in sentencing him to a seven-year cumulative sentence because it failed to consider rehabilitation as a proper purpose of felony sentencing. He bases this argument on the court's statement that "I don't personally believe that the goal of a prison term in this type of case is rehabilitation * * * I'm not convinced in 15 years as a Judge and 30 years as a lawyer that sexual offenders can be rehabilitated."

{¶28} R.C. 2929.11(A) states:

> A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

{¶29} In its journal entry imposing sentence, the court stated that it "considered all required factors of the law" and further stated that a prison term "is consistent with the purpose of R.C. 2929.11." Apart from its sentencing entry, the court mentioned Barrett's prospects for rehabilitation, but rejected them out-of-hand. In *State v. Nichols*, 2d Dist. No. 2010CA60, 2011-Ohio-4671, the Second District Court of Appeals considered a similar circumstance in which a sentencing judge told Nichols that "I'm not here to be concerned about what happens to you. Whether or not you're rehabilitated * * * — It's not my job to worry about what happens to you. It's my job to punish you, and it's my job

to protect the community." *Id.* at ¶ 36. The Second District criticized this approach, finding that the judge who sentenced Nichols failed to give the kind of individualized attention to the matter that "justice" required. *Id.*

**{¶30}** The distinction between *Nichols* and this case is that in *Nichols*, the court refused to consider whether Nichols could be rehabilitated, stating "it's not my job to worry about what happens to you." The court in this case did consider whether Barrett could be rehabilitated, but rejected that idea given its past experience in dealing with sexual offenders. The court stated that sexual offenders "can perhaps be taught to resist the urge, but nobody has convinced me yet from any of the literature or studies that anything makes the urge go away." Barrett may disagree with the court's statements, but those statements did consider rehabilitation.

**{¶31}** Barrett's argument is really that the court's outright rejection of the amenability of sexual offenders for rehabilitation was tantamount to no consideration at all. The difficulty with this approach is that Barrett appears to consider one's prospects for "rehabilitation" as obviating the need for a prison term. This argument incorrectly assumes that an offender's prospects for rehabilitation would necessarily rule out a prison term. *State v. Gilmer*, 6th Dist. No. OT-05-028, 2005-Ohio-6435, ¶ 7.

**{¶32}** Rehabilitation has lost favor in the criminal justice system. *State v. Boddie*, 170 Ohio App.3d 590, 2007-Ohio-626, 868 N.E.2d 699, ¶ 8 (8th Dist.). Under the rehabilitative theory of sentencing, the courts had broad discretion to order indeterminate sentences and early release based on the change shown by an offender during confinement.

This was replaced with a more punitive regime in which the goal of sentencing is to punish and protect. R.C. 2929.11(A). To accomplish the move towards punishment, the legislature imposed definite sentences that were designed to remove a great deal of the court's sentencing discretion. An offender's prospects for rehabilitation are a consideration in sentencing, but rehabilitation is certainly subordinate to punishment and protection in the current statutory scheme.

{¶33} We agree that the court's statements concerning the viability of rehabilitation for sexual offenders as a whole may have been broader than necessary in this case. But those statements do not show an abuse of the court's sentencing discretion because the court made it plain that it considered Barrett's need for punishment to outweigh his prospects for rehabilitation. In addition to the child pornography counts, Barrett pleaded guilty to two counts of voyeurism. The voyeurism counts were particularly disturbing to the court because they involved Barrett rigging a peephole in the shower of a bathroom at his house to watch his female roommate while she showered. What is more, he went far beyond mere voyeurism by surreptitiously shooting video of her showering and posting that video on the internet. The victim gave a compelling statement of the adverse ways in which Barrett's actions had harmed her; from the loss of trust she placed in him as a friend to the unspeakable violation of her privacy by having a nude video of her posted for the world to see.

{¶34} Barrett told the court that he was receiving therapy and engaging in Sexaholics Anonymous. These were positive steps for Barrett to take, but the court

determined that they did not overcome his need for punishment. Barrett admittedly violated the trust placed in him by the victims and told the court that he had given into temptation. We find that the court rationally concluded that Barrett's rehabilitation required a prison term.

III

{¶35} Finally, Barrett argues that his seven-year sentence is disproportionate to those given for similarly-situated offenders. In his sentencing memorandum, Barrett offered a list of sentences imposed in child pornography cases in Cuyahoga County from 2008 to October 2011 involving "similar offenses and similar defendants," showing a range of punishments from community control to 24 years in prison. He argues that his punishment should have fallen into the lower range because he had no prior criminal history and did not manufacture or create the images in question.

{¶36} R.C. 2929.11(B) states that a felony sentence should be "reasonably calculated" to achieve the goals of punishing the offender and protecting the public from future crime by the offender "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶37} R.C. 2929.11(B) states two different concepts: proportionality and consistency. "Proportionality," as encompassed in the goal of punishing an offender "commensurate" with the seriousness of his conduct, refers to the concept of the punishment fitting the crime. In *Collier*, 8th Dist. No. 95572, 2011-Ohio-2791, we stated:

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate" to the crime. *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 373, 715 N.E.2d 167, quoting *Harmelin v. Michigan* (1991), 501 U.S. 957, 1001, 111 S.Ct. 2680, (Kennedy, J., concurring in part and in judgment).

Claims of ineffective assistance of counsel based on a failure to object to the proportionality of a sentence are rarely, if ever, successful. *Ewing v. California* (2003), 538 U.S. 11, 21, 123 S.Ct. 1179, 155 L.Ed.2d 108 ("outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.") This is because courts are vested with "full discretion" to impose a sentence within the applicable statutory range. *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. The statutory range is established by the General Assembly, and any sentence falling within that range is presumptively valid. *Id*. at ¶ 14-15.

{¶38} "Consistency" in sentencing goes beyond considerations of an individual defendant to consider whether a sentence given in a particular case is consistent with those given to similar offenders. The goal of "consistent" sentencing does not mean that all sentences must be identical. In *State v. Bonness*, 8th Dist. No. 96557, 2012-Ohio-474, we stated:

The goal of "consistency" in sentencing as stated in R.C. 2929.11(B) does not mean uniformity. *State v. Klepatzki*, 8th Dist. No. 81676, 2003-Ohio-1529, ¶ 32. Each case stands on its own unique facts, so we have concluded that "[a] list of child pornography cases is of questionable value in determining whether the sentences imposed are consistent for similar crimes committed by similar offenders since it does not take into account all the unique factors that may distinguish one case from another." *State v. Siber*, 8th Dist. No. 94882, 2011-Ohio-109, ¶ 15. *Id.* at ¶ 27.

{¶39} In *Bonness*, we reversed a 40-year sentence on eight child pornography counts as being inconsistent with sentences imposed for similar crimes. We canvassed a number of our decisions showing penalty ranges from 10 to 20 years, noting for example

that in *State v. Geddes*, 8th Dist. No. 88186, 2007-Ohio-2626, we reversed a 30-year sentence on six counts of pandering sexually oriented materials when Geddes pleaded guilty to printing images of child pornography from a public library while on parole and subsequently affirmed an 18-year sentence imposed on remand. *Id.* at ¶ 28.

**{¶40}** *Bonness* was an egregious case because Bonness not only possessed child pornography, but was caught in a police sting in which he thought he was going to have sex with a 12-year-old girl and her father. Barrett claimed to have no pedophilic desire and offered the results of a polygraph examination that indicated the truthfulness of his negative answer to the question "as an adult, have you ever had sexual contact with a minor?" Yet he admitted engaging in acts of voyeurism in addition to possessing child pornography. Furthermore, he explained his conduct as merely "a temptation that I caved in to." The court was rightfully concerned by the violation of trust placed in him by his roommate and his surreptitiously videotaping her in the shower. His act of posting the video on the internet went beyond mere temptation. The court did not abuse its discretion by imposing a seven-year sentence.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

____

MELODY J. STEWART, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., CONCURS
IN JUDGMENT ONLY WITH SEPARATE
OPINION;

SEAN C. GALLAGHER, J., DISSENTS WITH
SEPARATE OPINION

COLLEEN CONWAY COONEY, J., CONCURRING IN JUDGMENT ONLY:

**{¶42}** I concur in judgment only because the majority goes beyond what I consider necessary to affirm the judgment. I concur in all but the majority's disagreement with the precedent of this court in *Baker* and *Corrao*. Clearly, in the instant case, each file Barrett saved is a separate offense, and that is why he pled guilty to nine counts of the same crime. *See State v. Hendricks*, 8th Dist. No. 92213, 2009-Ohio-5556 (multiple convictions are allowed for each individual image because a separate animus exists every time a separate image or file is downloaded and saved). Thus, the record contains enough information for us to affirm.

**{¶43}** Moreover, Barrett has failed to meet the standard set forth by this court to find plain error for these specific charges. He has failed to offer any evidence to make an obvious case for plain error in the trial court's failure to merge these nine counts of illegal use of a minor. Barrett admitted he had obtained the images as part of larger file transfers. In *State v. Snuffer*, 8th Dist. No. 96480, 2011-Ohio-6430, and *State v. Lindsey*, 8th Dist. No. 96601, 2012-Ohio-804, ¶ 13, this court held that defendants must make an "obvious case" for plain error review to apply. Barrett's suggestion that "it is possible that the same conduct could establish a violation of each offense," does not meet this requirement, not in light of his admission that he obtained the images as part of larger file transfers. Therefore, I would affirm.

SEAN C. GALLAGHER, J., DISSENTING:

**{¶44}** The majority opinion and this dissent represent two distinct views on the allied offense issue. In light of all the confusion and inconsistent application of the principles in R.C. 2941.25 that continue in spite of *Johnson*, this is a healthy and needed discourse. Both views raise issues involving the trial court record below, the duty of prosecutors and defense counsel, the duties of the trial judge, and the burden of who must raise the issue and how it must be resolved. If this case stands for anything, it calls for another review of these issues by the Supreme Court of Ohio. Clearly, many courts are still struggling with these issues, and unless the legislature acts to clarify the statutory

language, the Supreme Court of Ohio will once again have to intervene. *See State v. Anderson,* 1st Dist. No. C-110029, 2012-Ohio-3347.

**{¶45}** While the majority view is well written and well reasoned, it nevertheless represents an "end run" around the mandates of *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. While Barrett's guilty plea may be a complete admission of his guilt, it in no way is an acknowledgment that the facts support the imposition of separate convictions or that Barrett acted with a separate animus as mandated by *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

**{¶46}** In my view, plain error exists as a result of the trial court's failure to determine whether the offenses were allied where the absence of facts in the record makes that determination on appeal impossible. As the majority notes in paragraph six of their opinion, images were downloaded by Barrett on three separate dates, resulting in nine separate charges. There is no specificity in the individual indictment counts or in the record at any other location explaining "what goes where" to establish separate conduct or separate animus.

**{¶47}** In my view, the existence of plain error cannot be predicated on Barrett's failure to put facts in the record or his failure to raise the issue in the trial court. The defendant is under no duty to prove offenses are allied. Entering into a plea agreement to reduced charges, likewise, does not resolve the issue unless the defendant agreed in the plea that his conduct was committed with a separate animus.

> [N]othing in this decision precludes the state and a defendant from stipulating in a plea agreement that the offenses were committed with

separate animus, thus subjecting the defendant to more than one conviction and sentence. When the plea agreement is silent on the issue of allied offenses of similar import, however, a trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense.

*Underwood*, at ¶ 29.

{¶48} Barrett never agreed his counts were allied. If we look solely at the facts in the record, we cannot determine if his conduct involved separate acts or a separate animus for each of the nine offenses charged. Barrett downloaded large files containing multiple images or films on three distinct dates, but there is no specificity detailing the number or identity of these images or films to these specific download dates.[1] Thus, we are incapable of determining how, or if, these images are related to the specific charges to which Barrett pled guilty.

{¶49} It is a fundamental principle that an offender can be punished only once for a crime. The trial court judge has a duty to ensure this constitutional protection. If the facts necessary to determine whether offenses are allied are not in the record and the trial court does not inquire, then plain error exists when the issue is raised on appeal. R.C. 2941.25 codifies the protections of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 10, which prohibit multiple punishments for the same offense.

---

[1]This writer has previously affirmed the imposition of separate convictions for the possession of multiple films and pictures involving child pornography under the former *Cabrales* standard in *State v. Hendricks,* 8th Dist. No. 92213, 2009-Ohio-5556. Unlike in the present case, in *Hendricks,* the films and pictures were specifically identified and distinct.

**{¶50}** The majority views our earlier decisions in *State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, and *State v. Corrao*, 8th Dist. No. 95167, 2011-Ohio-2517, as departures from prior precedent only because it deems plain error cannot be found due to the "absence of facts" in the record. The majority has the cat chasing its own tail in a hopeless endeavor that can never be realized. The view that *it is plain error not to merge allied offenses, but we do not have facts to find plain error, therefore plain error does not exist*, is a self-fulfilling prophecy that defeats the constitutional protection outlined in *Underwood*. In my view, it is the absence of facts, or at least an inquiry into those facts, that makes the question ripe for review and creates plain error. In a previous case, this court held that the failure of the trial court to inquire was plain error and required a remand.

> In the present case, the parties did not stipulate that the offenses were not allied offenses, and the trial court did not make the necessary inquiry. Furthermore, the record of Quigley's plea and sentence does not contain the necessary details as to the timing, circumstances, and animus of the burglary and theft from which a court can make the determination as to whether the offenses are or are not allied offenses of similar import. The failure to make the inquiry was plain error and requires a remand.

*State v. Quigley,* 8th Dist. No. 96299, 2012-Ohio-2751, ¶ 10.

**{¶51}** Under the majority's view, the duty would fall to the defendant to raise the issue in the trial court and arguably prove the offenses were allied by putting sufficient facts in the record supporting this position. Short of that, the defendant would be left with a claim on appeal for ineffective assistance of counsel. This would absolve the trial

court and prosecutors of having to demonstrate why separate punishments were warranted.

 I reject this approach.

**{¶52}** As we noted in *Baker*,

The trial court is therefore prohibited from imposing individual sentences for counts that constitute allied offenses of similar import unless the defendant specifically stipulates to a separate animus or separate acts, either during the plea or at the sentencing hearing. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶26-27. Further, "[a] defendant's plea to multiple counts does not affect the court's duty to merge those allied counts at sentencing." *Underwood* at ¶ 26. A plea to reduced charges, in and of itself, is not a stipulation to separate animus or separate acts. Waiver of a fundamental, constitutional right must be an intentional relinquishment or abandonment of a right. *Id.* at ¶ 32. Defendants cannot "acquiesce away" a constitutional right.

*Baker,* 2012-Ohio-1833, ¶ 17.

**{¶53}** As further noted in *Underwood*,

[A] trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import. A defendant's plea to multiple counts does not affect the court's duty to merge those allied counts at sentencing. This duty is mandatory, not discretionary.

(Citations omitted.) *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26. Thus, when a sentence fails to include a mandatory provision, it may be appealed because such a sentence is "contrary to law" and is also not "authorized by law."

**{¶54}** The majority plays the *Antenori* card that has been used before in an effort to distinguish *Underwood*. I am well aware that the Supreme Court of Ohio dismissed the *Antenori* appeal as improvidently allowed following the release of *Underwood* and further declined to accept it on reconsideration. *State v. Antenori,* 8th Dist. No. 90580, 2008-Ohio-5987*,* is an anomaly that, in my view, is in conflict with *Underwood*. I am

also aware that I cited *Antenori* in a postconviction *Murnahan* decision referenced by the majority. *State v. Clementson,* 8th Dist. No. 94230, 2011-Ohio-1798. That case was not a direct appeal and involved a postconviction claim for ineffective assistance of counsel. That is a far different circumstance from Barrett's case now under review. Nevertheless, I readily acknowledge my view of allied offense analysis has undergone a transformation, and like many of the nearly 200 appellate decisions released since the Supreme Court of Ohio released *Johnson*, conflict and evolution is regrettably the norm and not the exception in this area of the law.

{¶55} I would also strongly reject the notion that because *Underwood* was decided when *Rance* was still in play, that it somehow has lost its viability in the post-*Johnson* world. *Underwood* was not about the test to determine allied offenses; it was about the right to be free from separate punishments for the same conduct, regardless of the test imposed. The principles of *Underwood* are clear and would be no different if *Underwood* was decided under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed 306 (1932); *State v. Logan,* 60 Ohio St.2d 126, 128, 397 N.E.2d 1345 (1979); *State v. Blankenship,* 38 Ohio St.3d 116, 526 N.E.2d 816 (1988); *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999); *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181; or *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

{¶56} In my view, *Baker* does not go as far as the majority claims that it does in its analysis. At no point does the term "per se" appear in the opinion. *Baker* does not

apply a different plain error standard than was used in *Underwood*. *Baker* simply points out that there has to be *something* in the record that would allow for a resolution or review of the allied offenses issue once the issue (whether in the trial court or on initial appeal) is raised. It is not so much a "per se" plain error violation, as it is the inability to resolve the issue based on the record and the trial court's failure to inquire. Call the error "plain" or another adjective of description, but that is where the error occurs. The semantics are not important. If facts exist in the record for a healthy examination, then the trial court's failure to act will not necessarily result in "per se" plain error. The failure to put something on the record by way of a stipulation, an expression of facts, an assertion, or even a finding by the trial court of separate conduct or animus results in the issue remaining unresolved and the constitutional protection potentially undermined. Appellant's use of the term "possible" in terms of whether these offenses are or are not allied is merely a representation of the fact that the matter is not capable of a fair and full determination based on this record.

{¶57} I also take issue with the majority parsing out distinctions between cases involving no contest pleas, guilty pleas, bench trials or jury trials or how the manner of conviction is achieved. This turns the discussion into a debate about trees when the forest is the issue. In all cases, it is the constitutional protection against multiple punishments that is critical, not the manner or method of conviction.

{¶58} I respectfully disagree with the majority's view that *Baker* creates an unfair burden on trial judges by having them take responsibility for determining whether offenses

are allied. The view that pleas to multiple counts will always create allied offense issues is an oversimplification or a "red herring" view of the issue. I think we all know when allied offense issues are implicated. All we have to do is find a simple way to address them. I am very much aware that trial judges are frustrated by never-ending mandates that turn plea sessions and sentencing hearings into mini-trials. Nevertheless, this does not have to be rocket science.

{¶59} I am well aware that there are offenders who deserve separate convictions and punishments for certain conduct. Rather than ignoring the question, prosecutors should relish the opportunity to make the case for why certain offenders deserve convictions or punishments based on their conduct. Barrett may well be one of them.

{¶60} Prosecutors are free to charge in any manner they see fit. They can charge as many counts as they conceivably feel cover the gamut of a defendant's conduct. With that, there are many opportunities to address the allied offenses issue along the path of case resolution. Prosecutors can put facts into the individual indictment counts distinguishing conduct; they can indicate in the response to a bill of particulars what offenses are not allied; at the time of a plea, they can indicate which offenses are not allied and why they are not allied; they can also point out at sentencing why offenses are not allied; they can also enter into a stipulation on what offenses are committed with a similar or distinct animus. Thus, at any point in the process, they can put facts on the record that would support a determination that certain offenses are not allied.

**{¶61}** This does not have to involve long or complicated hearings or witnesses. Historically, merger of offenses has always been viewed as a part of the sentencing process. Thus, "the sentencing process is less exacting than the process of establishing guilt." *State v. Bowser,* 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.), citing *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). Therefore, this process can easily be satisfied by a brief recitation of facts or circumstances by the prosecutor to aid the trial court in its determination. Nothing more should be required.

**{¶62}** The trial judge has the ultimate responsibility to ensure that an offender is punished only once for a specific crime. That is the ultimate issue that cannot be lost in this process. A defendant's conviction on multiple counts, regardless of how achieved, does not affect the court's duty to merge those allied counts at sentencing. This duty is mandatory, not discretionary. Therefore, when a sentence is imposed on multiple counts that are allied offenses of similar import in violation of R.C. 2941.25(A), R.C. 2953.08(D) does not bar appellate review of that sentence even though it was jointly recommended by the parties and imposed by the court. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923.

**{¶63}** If the record does not support it, or the trial court does not inquire, you have plain error. Therefore, I respectfully dissent.