[Cite as *State v. Rogers*, 2013-Ohio-3235.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 98292, 98584, 98585, 98586,
98587, 98588, 98589, and 98590**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FRANK ROGERS, JR.

DEFENDANT-APPELLANT

---

## DECISION EN BANC
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Criminal Appeals from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-552699, CR-544682, CR-545992, CR-553547,
CR-553806, CR-556821, CR-555183, and CR-557079

**BEFORE:** The En Banc Court

**RELEASED AND JOURNALIZED:** July 25, 2013

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, Suite 613
Cleveland, OH    44118

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Milko Cecez
Kristen L. Sobieski
Assistant Prosecuting Attorneys
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, OH    44113

**Also listed:**

**Amicus Curiae**

Robert L. Tobik
Cuyahoga County Public Defender

By: John T. Martin
Cullen Sweeney
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, OH    44113

SEAN C. GALLAGHER, J.:

{¶1} Defendant-appellant Frank Rogers, Jr., pleaded guilty to a series of charges in eight separate cases. He asserts on appeal that the trial court erred by failing to merge certain parts of the sentences in two of the cases, that the court failed to compute jail-time credit, and that the court failed to advise him of the consequences of violating postrelease control.

{¶2} Pursuant to App.R. 26 and Loc.App.R. 26, this court determined that a conflict existed between the original panel's decision in this case, released as *State v. Rogers*, 8th Dist. Nos. 98292, 98584, 98585, 98586, 98587, 98588, 98589, and 98590, 2013-Ohio-1027, and previous decisions by this court involving a number of issues related to allied offenses of similar import.

{¶3} These issues include determining the duty of a trial court judge under R.C. 2941.25 where a facial question of allied offenses of similar import exists but the trial court fails to inquire; determining the effect of a defendant's failure to raise the allied offenses of similar import issue in the trial court and whether that failure constitutes a valid waiver or forfeiture of the defendant's constitutional right against double jeopardy; determining the effect of a prosecutor's failure to put facts on the record detailing a defendant's conduct in relation to possible allied offenses of similar import at the trial court level; determining the impact of a silent or inconclusive record from the trial court that fails to detail the offender's actual conduct involving allied offenses of similar import; determining the effect of a guilty plea to multiple charges on the allied offenses of similar

import analysis; and determining the effect of the absence of a stipulation to the allied offenses of similar import question.

{¶4} Accordingly, we sua sponte granted en banc consideration in this matter and convened an en banc conference in accordance with App.R. 26(A)(2), Loc.App.R. 26(D), and *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672.

The Allied Offenses of Similar Import Claim in <em>Rogers</em>

{¶5} Rogers argues that his convictions in Cuyahoga C.P. No. CR-553806 on two counts of receiving stolen property were allied offenses of similar import and should have been merged at sentencing. Likewise, he asserts his convictions in Cuyahoga C.P. No. CR-545992 on two additional counts of receiving stolen property and one count of possession of criminal tools were also allied offenses of similar import and should have merged at sentencing.

Double Jeopardy

{¶6} At the outset, we revisit the significance of the allied offenses of similar import determination. The Fifth Amendment's Double Jeopardy Clause provides a criminal defendant with three protections: "'[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977),

quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Ohio v. Johnson*, 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

{¶7} In multiple-punishment cases, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

> Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended * * * to impose multiple punishments, imposition of such sentences does not violate the Constitution.

*Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

### Ohio and Allied Offenses of Similar Import

{¶8} Ohio's criminal statutes generally do not authorize multiple punishments for the same conduct. In 1974, the Ohio legislature enacted R.C. 2941.25. The legislation codified the protections of the Double Jeopardy Clauses of the Ohio and United States Constitutions, which prohibit multiple punishments for the same offense. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923.

> R.C. 2941.25. Multiple counts
>
> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the

same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶9} Historically, Ohio courts struggled interpreting the language in R.C. 2941.25. Likewise, determining the type of conduct by the offender that constituted either separate offenses or allied offenses of similar import was equally confusing. Starting in 1975, the Supreme Court of Ohio issued a series of decisions that over the years were met with mixed reviews on how best to address the constitutional protections against multiple punishments. *See generally State v. Ikner*, 44 Ohio St.2d 132, 339 N.E.2d 633 (1975), adopting *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *State v. Logan*, 60 Ohio St.2d 126, 128, 397 N.E.2d 1345 (1979); *State v. Blankenship*, 38 Ohio St.3d 116, 526 N.E.2d 816 (1988); *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999); *State v. Fears*, 86 Ohio St.3d 329, 715 N.E.2d 136 (1999); *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29; *State v. Yarborough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845; *State v. Cooper*, 104 Ohio St.3d 293, 2004-Ohio-6553, 819 N.E.2d 657; *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181; *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149; *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154; *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882; *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889.

{¶10} These cases were followed by a series of decisions that changed the

landscape of the merger analysis. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923 (a trial court commits plain error when it fails to merge allied offenses of similar import); *State v. Johnson* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061 (R.C. 2941.25 instructs courts to look at the defendant's conduct when evaluating whether his offenses are allied); and *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245 (an appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination).

The *Underwood*, *Johnson,* and *Williams* Decisions

{¶11} Prior to *Underwood*, many trial courts simply imposed concurrent sentences where the merger analysis was too confusing or unworkable. *Underwood* made it clear that allied offenses of similar import must be merged at sentencing or the sentence is deemed contrary to law. *Underwood* also made clear that even a defendant's plea to multiple counts does not affect the court's duty to merge allied counts at sentencing. The duty is mandatory, not discretionary. *Underwood* at ¶ 26. Significantly, *Underwood* determined that R.C. 2953.08(D) does not bar appellate review of a sentence involving merger even though it was jointly recommended by the parties and imposed by the court. *Id.* at ¶ 33.

{¶12} *Johnson* then reestablished the focus of the merger analysis on the plain language in the statute. "In determining whether offenses merge, we consider the defendant's conduct." *Johnson* at ¶ 44. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed

by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶ 49, quoting *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting). If both questions are answered affirmatively, then the offenses are allied offenses of similar import and will be merged. *Johnson* at ¶ 50.

{¶13} In *Johnson*, then Justice O'Connor,[1] in a separate concurring opinion, defined the term "allied offenses of similar import":

> In practice, allied offenses of similar import are simply multiple offenses that arise out of the same criminal conduct and are similar but not identical in the significance of the criminal wrongs committed and the resulting harm. R.C. 2941.25 permits a defendant to be charged with, and tried for, multiple offenses based on the same conduct but permits only one conviction based on conduct that results in similar criminal wrongs that have similar consequences.

*Id.* at ¶ 64 (O'Connor, J., concurring).

{¶14} Justice O'Connor further defined the distinction between the phrases "allied offenses" and "allied offenses of similar import." "[O]ffenses are 'allied' when their elements align to such a degree that commission of one offense would probably result in the commission of the other offense. Offenses are of 'similar import' when the underlying conduct involves similar criminal wrongs and similar resulting harm." *Id.* at ¶ 66-67.

{¶15} While many focus on the plurality decision in *Johnson* that abandoned the *Rance* test, we note that Justice O'Connor maintained in her concurring opinion in *Johnson* that *Rance* was overruled only "inasmuch as it requires a comparison of the

---

[1] Justice Maureen O'Connor became Chief Justice on January 1, 2011.

elements of the offenses *solely* in the abstract." (Emphasis added.) *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 68. *See also Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699.

**{¶16}** The *Johnson* test did not completely eliminate consideration of the legal elements; it simply made the offender's conduct the lynchpin of that analysis. Thus, the court uses the elements of the offenses as guideposts to measure the defendant's conduct as it relates to the offenses in determining whether multiple offenses could have been committed by the same conduct. *State v. Hicks*, 8th Dist. No. 95169, 2011-Ohio-2780, ¶ 9. This is important in situations, as here, where the legal elements of the offenses present a facial question of merger. This initial comparison often establishes or eliminates the need for subsequent allied offenses of similar import analysis.

**{¶17}** The Supreme Court revisited the *Johnson* test and again described its workings in *Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245. The court again referenced considering the elements of the crimes in citing back to *Blankenship*, 38 Ohio St.3d at 117, 526 N.E.2d 816:

> This court established a two-part test for analyzing allied-offense issues in *State v. Blankenship*, 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988).

> "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses."

(Emphasis sic.)

*Williams* at ¶ 17, quoting *Blankenship* at 117.

**{¶18}** Significantly, the decision in *Williams* stressed how important the facts in the record were to the merger analysis on appeal:

> Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. * * * "[A] review of the evidence is more often than not vital to the resolution of a question of law. * * * " *O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972).

> As in cases involving review of motions to suppress, "the appellate court must * * * independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

*Williams* at ¶ 25-26. Further, "[a]n appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *Id.* at ¶ 28.

### The *Rogers* Case

**{¶19}** The record before us reveals that no discussion took place in the trial court about merger of the counts in either of the underlying cases. While we can resolve the issue of merger in CR-553806 based on a facial review of the convictions, nothing in the documents that comprise the record in CR-545992 contains sufficient factual information that would permit an allied offenses of similar import analysis.

### Receiving Stolen Property Convictions in CR-553806

**{¶20}** In CR-553806, the two counts of receiving stolen property in the indictment revealed property taken from two distinct victims from two

separate houses apparently taken during burglaries that occurred the same day. Rogers argued on appeal that these acts were identical, so they should have been merged at sentencing.

{¶21} Even without facts to analyze Rogers's conduct, we can determine from the face of these convictions that these offenses were not subject to merger. A review of the elements of the receiving stolen property charges shows an offender must have "receive[d], retain[ed], or disposed of *property of another*, knowing or having reasonable cause to believe that it has been obtained through commission of a theft offense." (Emphasis added.) R.C. 2913.51.

{¶22} Separate victims alone established a separate animus for each offense. Even if the defendant cannot distinguish one victim's goods from another's does not mean his conduct did not impact multiple victims. Each victim has a specific and identifiable right to redress against the conduct of the defendant. The defendant's conduct in receiving goods he knows to be stolen inherently implies that they may be from multiple owners or locations. "[M]ultiple sentences for a single act committed against multiple victims is permissible where the offense is defined in terms of conduct toward 'another as such offenses are of dissimilar import; the import being each person affected.'" *State v. Tapscott*, 7th Dist. No. 11 MA 26, 2012-Ohio-4213, quoting *State v. Jones*, 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985). *See also State v. Franklin,* 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48; *State v. Phillips,* 8th Dist. No. 98487, 2013-Ohio-1443, ¶ 8-10.

**{¶23}** For this reason, we affirm the trial court's imposition of separate sentences in CR-553806.

Receiving Stolen Property and Possession of
Criminal Tools Convictions in CR-545992

**{¶24}** Central to our analysis of the convictions in CR-545992 and the primary focus of this en banc review is the effect of a trial court's failure to inquire or address an allied-offense question where it is clear from a facial review of the charges that the offenses may be allied, even when facts necessary to determine the conduct of the offender are missing.

**{¶25}** In this case, Rogers was convicted of two separate counts of receiving stolen property. One offense involved a "stolen pickup truck." The second offense involved "tires and rims." The possession of criminal tools offense involved "a tire jack and/or tow chain and/or lug nut wrenches." Although the receiving stolen property offenses involved the same victim and the possession of criminal tools offense occurred on the same date as the receiving stolen property offenses, we are unable to determine if these offenses were allied offenses of similar import. It is unclear if the "tires and rims" are from the same "stolen pickup truck" or from another vehicle. Likewise, it is unclear how the tools involved were related to either of the receiving stolen property offenses. There are simply no facts in the record to aid in our mandated de novo review of the issue.

**{¶26}** At the outset of our analysis, we note that not every case involving multiple convictions with a silent record will require an allied-offense determination by the trial court. Even where specific facts of the case are unknown, an appellate court can assess

whether a claim requires a return to the trial court. For example, cases that assert a claim that the allied-offense issue was not addressed in a silent record may nevertheless fail where the indictment shows the offenses were committed on separate dates or involved separate victims or involve statutes that would require completely separate conduct. Conversely, cases that involve offenses that facially present a question of intertwined conduct, such as kidnapping and rape, or aggravated robbery and kidnapping, or gross sexual imposition and rape, create an allied-offense challenge that can result in the finding of error for failing to address the merger issue.

## The Role of the Trial Judge

{¶27} *Underwood* placed the duty squarely on the trial court judge to address the merger question. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. Likewise, the merger statute imposes the same duty. R.C. 2941.25. Ultimately, it is the trial judge who imposes the sentence in a case. While the judge cannot be an advocate for either position, the trial court must address the potential allied-offense issue when the charges facially present a question of merger. A defendant's conviction on multiple counts, regardless of how achieved, does not affect the court's duty to merge allied offenses of similar import at sentencing.

{¶28} When a facial review of the charges and the elements of the crimes present a viable question of merger, the court must apply the *Johnson* test.

{¶29} Under the first prong, the court determines "whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to

commit one without committing the other." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 48, citing *Blankenship*, 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring). ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses can be committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.")

{¶30} If the court's answer in the first prong is yes, then the second prong requires the trial court to determine if, in fact, the offenses were actually committed by the same conduct, i.e., "'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting). If the answer to both questions in both prongs is yes, then the offenses are allied offenses of similar import and they must be merged. *Johnson* at ¶ 50.

{¶31} "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

{¶32} Where the charges present a facial question of merger, the court must perform the analysis. As stated in *State v. Baker*, 8th Dist. No. 97139, 2012-Ohio-1833, ¶ 19:

> In short, there is no magic cleansing that occurs through the process of case resolution that satisfies the constitutional prohibition against imposing individual sentences for counts that constitute allied offenses. Merger must be addressed and resolved, or it remains outstanding. As

noted in *Underwood* [124 Ohio St.3d 365, 2012-Ohio-1, 922 N.E.2d 923, at ¶ 20], "[a] trial court does not have the discretion to exercise its jurisdiction in a manner that ignores mandatory statutory provisions." *Id*. Thus, the constitutional and Ohio statutory prohibition against multiple punishments for the same conduct must always be addressed in the absence of a stipulation to a separate animus or separate acts.

{¶33} We therefore hold that a trial court commits error where multiple charges facially present a question of merger under R.C. 2941.25 and the trial court fails to conduct an allied offenses of similar import analysis. We will discuss the effect of this error in more detail below.

{¶34} The distinction between our view and the dissent is we believe plain error exists in the failure to address a statutory mandate. The plain error occurs at that point and need not be premised on the illusive question of whether the multiple offenses would actually merge.

### Defense Counsel and the Failure to Raise Merger

{¶35} Rogers's trial counsel failed to raise the merger question in the trial court below. However, because double jeopardy is implicated, there is a presumption against waiver of constitutional rights. *Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 32, citing *State v. Adams*, 43 Ohio St.3d 67, 69, 538 N.E.2d 1025 (1989). "'Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Adams* at 69, quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "A waiver of important constitutional rights cannot

be presumed from a silent record * * *." *State v. Stone*, 43 Ohio St.2d 163, 167, 331 N.E.2d 411 (1975).

**{¶36}** Furthermore, even if the failure to assert double jeopardy at the trial court level constituted a forfeiture of that right, the jeopardy claim may be reviewed for plain error. *See United States v. Ehle*, 640 F.3d 689, 694 (6th Cir.2011). Despite the dissent's analysis of the facts in both *Underwood* and *Johnson*, those admitted errors were not deemed "waived" or "forfeited" or reduced to an ineffective assistance of counsel claim on appeal.

**{¶37}** Defense counsel's failure to raise the merger issue does not relieve the trial court of its duty to determine the merger question when a facial question of merger presents itself. Ultimately it is the trial court that must apply the statutory requirements in R.C. 2941.25 and address the possible merger questions.[2]

**{¶38}** While defense counsel should raise potential merger questions, it is important to note that a defendant and his counsel have no role in the charging process, and the defendant has no burden to prove offenses merge in the guilt phase. Merger is not an affirmative defense under R.C. 2901.05(D)(1)(a) and (b). Merger occurs just prior to the entry of conviction and is a function of sentencing that is the exclusive domain of the trial judge.

---

[2] Even if defense counsel's failure to raise a merger issue amounts to an ineffective assistance of counsel claim, as referenced by the dissent, this does not relieve the trial judge of his or her statutorily mandated duty to address merger.

{¶39} Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. Thus, *Underwood* makes clear that a defendant may appeal his sentence even though it was jointly recommended by the parties and imposed by the court. *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. As will be discussed later, when the issue of merger is facially apparent, the failure of the trial court to address the merger issue amounts to plain error. Therefore, a defendant's failure to raise an allied offenses of similar import issue in the trial court is not a bar to appellate review of the issue.

### Effect of Guilty Plea

{¶40} In *Underwood*, the Supreme Court of Ohio held that the issue of allied offenses under R.C. 2941.25 may be appealed even if the defendant entered separate pleas to multiple offenses and received a jointly recommended sentence. *Id*. at ¶ 26. In this case, there was no discussion about Rogers's specific conduct at the time of the plea. Likewise, there was no stipulation or understanding of how the receiving stolen property counts or the possession of criminal tools count related to each other. In the absence of a stipulation or an agreement on which offenses are allied, a guilty plea does not negate the court's mandatory duty to merge allied offenses of similar import at sentencing. *Underwood* at ¶ 26.

{¶41} While facts establishing the conduct of the offender offered at the time of a plea may be used to establish that offenses are not allied, a guilty plea alone that does not include a stipulation or a finding that offenses are not allied offenses of similar import

does not conclusively resolve the merger question. Thus, a guilty plea alone does not constitute a valid waiver of the protections from possible double jeopardy under R.C. 2941.25.

## The Role of Prosecutors

{¶42} The statute places no burden of proof on prosecutors to establish that offenses do not merge. Again, the determination of merger is in the hands of the trial judge based on the charges and the facts before the court.

{¶43} We are well aware that there are offenders who deserve separate convictions and punishments for certain conduct. Rather than ignoring the question, prosecutors should relish the opportunity to make the case for why certain offenders deserve convictions or punishments based on their conduct.

{¶44} Prosecutors are free to charge in any manner they see fit. They can charge as many counts as they conceivably feel cover the gamut of a defendant's conduct. With that, there are many opportunities to address the allied-offense issue along the path of case resolution. Prosecutors can put facts into the individual indictment counts distinguishing conduct; they can indicate in the response to a bill of particulars what offenses are not allied; at the time of a plea, they can indicate which offenses are not allied and why they are not allied by stating a factual basis for the plea, even if one is not required under Crim.R. 11; they can file a sentencing memorandum outlining the merger issues; they can also appear at sentencing and point out why offenses are not allied; they can also enter into a stipulation on what offenses are committed with separate conduct or a distinct animus.

Thus, at any point in the process, prosecutors can put facts on the record that would support a determination that certain offenses are not allied.

{¶45} This does not have to involve long or complicated hearings or witnesses. Historically, merger of offenses has always been viewed as a part of the sentencing process. Thus, "the sentencing process is less exacting than the process of establishing guilt." *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.), citing *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). Therefore, this process can easily be satisfied by a brief recitation of facts or circumstances by the prosecutor to aid the trial court in its determination. Nothing more should be required.[3]

---

[3] In one of the more insightful decisions on this issue released more than 30 years ago, former Judge Alvin Krenzler noted:

> When there is a probability that the allied offense issue may arise in a case, the prosecutor and defense counsel would be well advised to squarely confront the issue in any plea bargaining that takes place. By resolving this question at the plea bargaining stage and incorporating the resolution of the allied offense issue in the plea bargain to be placed on the record, the prosecutor and defense counsel will act to avoid later problems in the validity of the plea bargain, in the entering of the plea, in the acceptance of the plea, in the judgment of conviction, and any appeal of the case.

*State v. Kent*, 68 Ohio App.2d 151, 155, 428 N.E.2d 453 (8th Dist.1980), fn.1.

The Application of Plain Error

**{¶46}** If the facts necessary to determine whether offenses are allied offenses of similar import are not in the record and the trial court does not inquire, then plain error exists when the issue is raised on appeal. *See State v. Barrett*, 8th Dist. No. 97614, 2012-Ohio-3948, 974 N.E.2d 185, (S. Gallagher, J., dissenting.)

**{¶47}** Pursuant to the terms of Crim.R. 52(B), plain errors or defects that affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶48}** Plain error requires:

(1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," which means that it "must be an 'obvious' defect in the trial proceedings," and (3) "the error must have affected 'substantial rights,'" which means that "the trial court's error must have affected the outcome of the trial.

*State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 45, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶49}** We find that in failing to address a merger issue, there is a deviation from a legal rule. Thus, as here, when a trial court fails to determine whether offenses are allied offenses of similar import, the first prong of the plain error test is satisfied. The legislative requirement under R.C. 2941.25 to determine allied offenses is also mandated

by the Supreme Court of Ohio in *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923. "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *Id*. at ¶ 23. "[W]hen a sentence fails to include a mandatory provision, it may be appealed because such a sentence is 'contrary to law' and is also not 'authorized by law.'" *Id.* at ¶ 21.

{¶50} The second prong requires that the error must be "plain" or "obvious." Where it is clear from a facial review of the convictions that the allied offenses of similar import analysis should have been conducted but was not, the error is plain and obvious. Here the trial court should have realized from the face of the charges in CR-545992 that a merger analysis of the receiving stolen property and possession of criminal tools offenses was necessary. When the legislature statutorily mandates a procedural duty under R.C. 2941.25 to protect an established constitutional right, a violation of that duty constitutes error.

{¶51} Lastly, the third prong of plain error requires that the error must have affected the "substantial rights" of the accused. Clearly, the prospect of being subjected to multiple punishments for offenses that may be allied affects a defendant's substantial rights. In our view, the unresolved nature of double jeopardy so undermines the integrity of the proceedings that it constitutes plain error and satisfies this prong.

{¶52} To find otherwise would undermine the *Underwood* decision and the legislative mandate of R.C. 2941.25. Further, a defendant would be left with the limited

remedy of an ineffective assistance of counsel claim on appeal. That claim, like the allied offenses of similar import claim, would contain no more facts in support of it than the initial allied offenses of similar import claim. In the end, a postconviction relief petition would be all that remained as a remedy after the case is over. The unresolved nature of the double jeopardy issue affects the outcome of the case and prejudices the offender.

Distinguishing Forms of Plain Error

{¶53} We are cognizant that other panels of this court have declined to find plain error when the record does not contain facts from which an allied-offense error might be determined. They take issue with the approach that finds plain error when it is uncertain if the outcome of the case would have been otherwise. This view is outlined in *State v. Snuffer*, 8th Dist. Nos. 96480, 96481, 96482, and 96483, 2011-Ohio-6430, ¶ 9; *State v. Lindsey*, 8th Dist. No. 96601, 2012-Ohio-804, ¶ 13; *State v. Barrett*, 8th Dist. No. 97614, 2012-Ohio-3948, 974 N.E.2d 185; and in the original panel decision in this case released as *State v. Rogers*, 8th Dist. Nos. 98292, 98584, 98585, 98586, 98587, 98588, 98589, and 98590, 2013-Ohio-1027.

{¶54} These cases accept the principle that it is plain error not to merge allied offenses, but rationalize that since there are no facts to find plain error, plain error does not exist. This is a self-fulfilling prophecy that defeats the constitutional protection outlined in *Underwood*. In our view, it is the absence of facts, or at least an inquiry into those facts, that makes the question ripe for review and creates plain error.

**{¶55}** The duty to merge implies a duty to inquire and determine whether multiple charges are allied offenses of similar import. Without the duty to inquire and determine, the duty to merge would be empty. An essential step in the merger process is applying the requirements of R.C. 2941.25, and hence the *Johnson* test, to the multiple charges. In our view, the failure to take this step where a facial review of the charges reveals it is necessary establishes prejudice and affects the outcome of the case. This is the fundamental distinction between our view and that of the dissent.

**{¶56}** In *State v. Corrao*, 8th Dist. No. 95167, 2011-Ohio-2517, ¶ 10, this court extended *Underwood* and held that "the trial court's failure to make the necessary inquiry [into the allied-offense issue post-*Johnson*] constitutes plain error necessitating a remand." There is historical support for this proposition. In *State v. Kent*, 68 Ohio App.2d 151, 428 N.E.2d 453 (8th Dist.1980), this court held that the trial court has "an affirmative duty to make inquiry as to whether the allied offense statute would be applicable" prior to sentencing the defendant. *Id.* at 156; *see also State v. Latson*, 133 Ohio App.3d 475, 728 N.E.2d 465 (8th Dist.1999). *Kent* was implicitly overruled by *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990), which overruled the defendant's challenge on an allied-offense issue for not being raised at the trial court level during the plea and sentencing hearings. Of course, *Comen* itself has since been contradicted by *Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, at ¶ 29. *See Baker*, 8th Dist. No. 97139, 2012-Ohio-1833.

**{¶57}** Most traditional plain error deals with issues involving the guilt phase.   *See State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147.   Unlike plain error claims in the guilt phase, procedural plain error in sentencing does not affect the determination of guilt or innocence.   The effect of finding plain error in the sentencing phase is minimal on the overall case and requires a return to the trial court solely to determine if any of the convictions merge.   *See State v. Biondo*, 11th Dist. No. 2012-P-0043, 2013-Ohio-876.   We also note that as trial courts become more aware of their duty to inquire and address merger questions, this problem will largely disappear. Even when trial courts fail to address the issue, there are often facts in the record that allow for resolution of the issue by de novo review on appeal.   Thus, very few of these cases will result in a return to the trial court.

**{¶58}** If a trial court failed to advise a defendant under Crim.R. 11 of the right to subpoena witnesses, we would automatically find plain error.   We would not contemplate or hedge our finding on whether the record is silent on the question of whether the defendant would have actually subpoenaed witnesses.   It is enough that the advisement was not made to demonstrate the plain error.

**{¶59}** The failure to address the allied-offense issue, in our view, is no different. The plain error goes to the failure to address the required allied-offense analysis, not the plain error that exists when a record clearly demonstrates the offenses should have merged.

Other Issues

**{¶60}** Rogers also raised issues regarding jail-time credit and postrelease control.

**{¶61}** Rogers argued that the court erred by failing to compute his jail-time credit as mandated by R.C. 2967.191 and that trial counsel was ineffective for failing to request an accurate calculation of the jail-time credit. This assignment of error is moot because the court granted Rogers's pro se motion for jail-time credit on April 16, 2012.

**{¶62}** Lastly, Rogers complains that the court erred by failing to advise him of the consequences of violating postrelease control. This assignment is overruled because the court did apprise Rogers during sentencing of the consequences of violating postrelease control. *See* tr. 69-70.

## Conclusion

**{¶63}** We therefore hold the following:

(a) Where a facial question of allied offenses of similar import presents itself, a trial court judge has a duty to inquire and determine under R.C. 2941.25 whether those offenses should merge. A trial court commits plain error in failing to inquire and determine whether such offenses are allied offenses of similar import.

(b) A defendant's failure to raise an allied offenses of similar import issue in the trial court is not a bar to appellate review of the issue.

(c) While facts establishing the conduct of the offender offered at the time of a plea may be used to establish that offenses are not allied, a guilty plea alone that does not include a stipulation or a finding that offenses are not allied offenses of similar import

does not conclusively resolve the merger question. Thus, a guilty plea does not constitute a valid waiver of the protections from possible double jeopardy under R.C. 2941.25.

**{¶64}** We overrule the prior decisions of this court to the extent they are in conflict with this decision. *See, e.g.*, *Snuffer*, 8th Dist. Nos. 96480, 96481, 96482, and 96483, 2011-Ohio-6430; *Lindsey*, 8th Dist. No. 96601, 2012-Ohio-804; *Barrett*, 8th Dist. No. 97614, 2012-Ohio-3948. In this case, we sustain the first assignment of error to the extent a remand is necessary to establish the underlying facts of Rogers's conduct in CR-545992 and for the trial court to determine whether the subject crimes should merge for sentencing purposes.

**{¶65}** By separate entry, we certify a conflict between this decision and the Sixth District's decision in *State v. Wallace,* 6th Dist. No. WD-11-031, 2012-Ohio-2675.[4]

**{¶66}** Judgment affirmed in part, reversed in part, and cause remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[4] The parties are advised that in order to institute a certified-conflict case in the Supreme Court of Ohio, a party must file a notice of certified conflict in the Supreme Court within 30 days of this court's order certifying the conflict. S.Ct.Prac.R. 4.1.

SEAN C. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, J.,
MARY J. BOYLE, J.,
FRANK D. CELEBREZZE, JR., J.,
EILEEN A. GALLAGHER, J.,
EILEEN T. GALLAGHER, J.,
MARY EILEEN KILBANE, J.,
KATHLEEN ANN KEOUGH, J.,
LARRY A. JONES, SR., J.,
TIM McCORMACK, J., and
KENNETH A. ROCCO, J., CONCUR

KENNETH A. ROCCO, J., CONCURS WITH SEPARATE OPINION in which Patricia Ann Blackmon, Mary J. Boyle, Eileen A. Gallagher, Eileen T. Gallagher, Sean C. Gallagher, Larry A. Jones, Sr., Kathleen Ann Keough, Mary Eileen Kilbane, and Tim McCormack, JJ., CONCUR

LARRY A. JONES, SR., J., CONCURS WITH SEPARATE OPINION in which Patricia Ann Blackmon, Mary J. Boyle, Eileen A. Gallagher, Eileen T. Gallagher, Sean C. Gallagher, Kathleen Ann Keough, Mary Eileen Kilbane, Tim McCormack, and Kenneth A. Rocco, JJ., CONCUR

MELODY J. STEWART, A.J., DISSENTS WITH SEPARATE OPINION


KENNETH A. ROCCO, J., CONCURRING WITH MAJORITY OPINION:

{¶67} While I concur with the reasoning of the majority opinion, I write separately to express my concern that the dissenting opinion may become the law in this state. Should that occur, the trial judge will be relegated to a passive role at a time when his or her role rightfully is paramount. Moreover, I do not share the dissenting opinion's trust that a postconviction petition will afford relief to a defendant who is unaware when he or

she enters into a plea agreement of the nuances existing between the legal concepts of "forfeiture" and "waiver"; arguably, that issue "could have been raised" in a direct appeal.

{¶68} In addition, I wish to point out that because an analysis *with a solution to the dilemma presented in this case* was proposed in *State v. Kent*, 68 Ohio App.2d 151, 428 N.E.2d 453 (8th Dist.1980), that case deserves more than what the majority opinion affords it.

{¶69} Crim.R. 11(C) vests the trial court with the responsibility to ensure that a defendant is not unknowingly, involuntarily, or unintelligently surrendering his constitutional rights at a plea hearing. Obviously, the right conferred under the Double Jeopardy Clause qualifies as one.

{¶70} Thus, although the rule does not specifically require it, prior to making a finding of guilt, the trial court should make an inquiry concerning the facts underlying the defendant's change of plea. This court may not "have the authority to impose" such an action on the trial court, as the dissenting opinion notes, but the rule certainly encompasses it and provides the trial court with the jurisdiction to do so.

{¶71} As stated in *Kent*, 68 Ohio App.2d 151, 428 N.E.2d 453, after the defendant enters his change of plea to all of the offenses, and the trial court has otherwise complied with its duties under Crim.R. 11(C), a determination can then be made with respect to any potential allied-offense issue. The *Kent* court noted:

> This can occur in one of several situations.
>
> First, if either the prosecutor, the defense counsel, or a defendant advises the court that the defendant is pleading guilty to multiple offenses

and that in entering the plea consideration was given to the allied offense statute, the court can then accept the guilty plea and enter a judgment of conviction for all of the offenses to which the party has pled guilty. [Footnote omitted.]

In the event that a statement similar to that given above is not made, but a defendant affirmatively raises the issue of allied offenses and indicates that he is entering a plea of guilty to multiple offenses that are allied offenses of similar import and that a judgment of conviction can only be entered for one, the court will proceed to *accept the guilty plea to all of the offenses*. The court will then conduct a voir dire hearing to determine whether they are allied offenses of similar import with a single animus *which would require a judgment of conviction for only one offense*. If, after conducting such a hearing on the record, the cou[r]t determines that the offenses are allied offenses of similar import with a single animus, a judgment of conviction for only one offense may be entered. If the court, after conducting a hearing on the record, determines that there were multiple offenses of dissimilar import or offenses committed separately or with a separate animus as to each, the court will then enter a judgment of conviction for each of the offenses. R.C. 2941.25(A) and (B).

* * * If nothing is said by either the prosecutor or the defendant in regard to allied offenses and the court has accepted the guilty plea to all of the offenses, *the court has an affirmative duty to make inquiry as to whether the allied offense statute would be applicable. Under these circumstances, the court would explain that in Ohio there is an allied offense statute [that protects the constitutional right against double jeopardy], and thus, depending upon the evidence, a judgment of conviction may only be entered for one offense; and a hearing would be held to determine if there are such allied offenses.*

*We recognize that Crim.R. 11 does not contain a requirement that the court conduct such a hearing after accepting the guilty plea. Nevertheless, the allied offense statute is mandatory in that when there are allied offenses of similar import, there can only be one judgment of conviction.*

Therefore, two significant alternatives present themselves. First, the trial court could accept the guilty plea to the multiple offenses of similar import, make no further inquiry, and sentence the defendant for each offense. Then, if an appeal is taken, a defendant who has pled guilty to multiple offenses of similar import may raise the issue that there were allied offenses of similar import with a single animus and that the judgment of conviction for the multiple offenses should not have been entered. He would argue that he did not make a knowing, intelligent and voluntary plea because he was not advised of the allied offense statute.

*On the other hand, a trial court could conduct an allied offense hearing on the record for multiple offenses of similar import. After that, the trial judge would determine whether sentence could be imposed for only one offense, or if the offenses were allied offenses, impose separate sentences as to each one shown to have an animus separate from the others. This process would have an additional advantage: it would provide the record necessary for an appellate court to review the determination below.*

*We believe the better practice would be for the court to conduct the allied offense hearing when a defendant has pled guilty to multiple offenses of similar import. In this way, the defendant's rights are protected and the defendant is then precluded from successfully raising the allied offense issue on appeal. Thus, in the interests of judicial economy and protection of the rights of the defendant, it is the better practice to have the trial court conduct the allied offense hearing after accepting a guilty plea to offenses which may be construed to be allied offenses of similar import.*

Further, in the event that the trial court erred in its determination of allied offenses, the entire guilty plea is not vacated. It is only the judgment of conviction relating to the allied offenses.

(Emphasis added.)

**{¶72}** The foregoing procedure makes eminent sense. In advising the defendant during the colloquy at the plea hearing of this additional constitutional right, putting the prosecutor to his proof, requiring defense counsel to advocate for his client, and making a final determination of whether there exists a factual basis prior to making a finding of guilt, the trial court is not acting as an advocate for anything but the law itself. This is the judge's sole responsibility, after all.

**{¶73}** Despite the implicit directive Crim.R. 11(C) contains, the merger issue has been declared in some instances as one that can "only occur at sentencing." *See State v. Snuffer*, 8th Dist. Nos. 96480, 96481, 96482, and 96483, 2011-Ohio-6430, ¶ 10. Therefore, the trial court may, in addition, require the parties to submit sentencing memoranda on the issue prior to conducting the sentencing hearing. The prosecutor at the

same time could be advised to be prepared to elect, should the trial court make the determination that merger must occur. This would serve several beneficial purposes.

**{¶74}** It would lend further support for the trial court's determinations with respect to guilt, merger, and, incidentally, proportionality. It would provide more material for purposes of appellate review. It would also address the concerns set forth by the dissenting opinion. *See also State v. Barrett*, 8th Dist. No. 97614, 2012-Ohio-3948, ¶ 24-25 (which set forth the belief that the trial judge should not be placed in the position of "advocating" for the defendant but acknowledged that, at the plea hearing, "the court has an affirmative duty to advise a defendant of the consequences of waiving constitutional rights").

**{¶75}** Finally, it would also have the advantage of cutting short the process currently in use, i.e., several appeals, as the issue comes from the trial court to this court, is reviewed with or without an adequate record, and is remanded for the trial court to make another decision for this court to review again. Adding the necessity for the filing of a petition for postconviction relief as a method of redressing the issue merely compounds the problem. Judicial economy is clearly lacking in this area, and it is this court's duty to provide some *guidance* to the trial courts. The procedure outlined in *Kent*, 68 Ohio App.2d 151, 428 N.E.2d 453, serves both ends.

**{¶76}** The vexing problem this case presents easily could be solved by the Ohio Supreme Court. That court could either embrace the procedure proposed in *Kent*, or

amend Crim.R. 11(C) to require the trial judge, prior to accepting the change of plea, to make an inquiry into the underlying facts.

LARRY A. JONES, SR., J., CONCURRING WITH MAJORITY OPINION:

{¶77} I concur in judgment with the reasoning of both the majority opinion and Judge Rocco's concurring opinion, but write separately to provide simple and straightforward instructions for the trial court.

{¶78} As highlighted by the majority, it is a fundamental principle that an offender can be punished only once for a crime; otherwise, the offender's constitutional right to be protected from double jeopardy has been violated.

{¶79} When an offender is convicted of more than one offense, R.C. 2941.25 obligates the trial court to determine whether the offenses are allied. This obligation is the same whether the conviction is the result of a plea of guilty, a plea of no contest, or a verdict after a trial.

{¶80} Therefore, if an offender is convicted of more than one offense and the parties do not expressly agree, i.e. stipulate, that the offenses *are not* allied offenses of similar import, the trial court must make the inquiry and this inquiry must take place on the record before the offender is sentenced (but this inquiry may take place at the sentencing hearing).

{¶81} The trial court is obligated to do an allied-offenses analysis, on the record each time there is a conviction of more than one offense. While, in some cases, it may seem tedious, in the long run it will save the state's and court's resources by streamlining

multiple appeals and, most importantly, ensure the constitutional rights of the defendant against double jeopardy.

MELODY J. STEWART, A.J., DISSENTING:

{¶82} I believe that the majority's decision misinterprets the holding in *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, that "allied offenses of similar import must be merged at sentencing or the sentence is contrary to law."  I agree that it is plain error for the court to sentence an offender to serve multiple terms of imprisonment for allied offenses of similar import — when an allied offenses error is obvious on the record, we must find the error rises to the level of plain error.  The question presented en banc is what to do when a defendant pleads guilty to an indictment, fails to offer any evidence at sentencing to show why the offenses are allied, and the appellate record contains no facts to show why multiple offenses should merge for sentencing.

{¶83} Consistent with established principles of appellate review, I would find that the defendant who pleads guilty to multiple offenses and fails to raise an allied offenses issue at sentencing forfeits the right to argue all but plain error on appeal.  And since a plain error analysis is always predicated on there being an "obvious" error in failing to merge allied offenses, the claimed error must fail if the record contains no facts proving that a merger error occurred.

{¶84} The majority of this court decides differently, reversing and remanding a conviction not because an error occurred, but because it cannot tell if an error occurred.

Rather than rely on the established application of the plain error rule, the majority circumvents the rule by holding that plain error occurs simply because the court failed to conduct a "facial" inquiry of the offenses at sentencing to determine whether multiple offenses are allied. *Underwood* does not explicitly place a duty on the court to make this inquiry nor can that duty be inferred. What is more, in creating this new duty for the court (and the prosecuting attorney), the majority relieves defense counsel of any duty to protect a client's rights — it essentially finds that any issue of ineffective assistance of counsel resulting from counsel's failure to raise the merger issue at sentencing is superseded by the court's per se error in failing to raise the issue sua sponte.

**{¶85}** This holding is a misapplication of the plain error rule, a misreading of Supreme Court precedent, and a clear departure from our traditional adversary process. I respectfully dissent.

I

**{¶86}** The plain error doctrine set forth in Crim.R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This rule is identical to Fed.R.Crim.P. 52(b) and Ohio courts have resorted to federal precedent when construing the state version of the rule. *See, e.g., State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 18.

**{¶87}** To prevail on a showing of plain error, a defendant must prove three things: (1) an error, (2) that is plain, and (3) that affects substantial rights. *See Jones v. United States*, 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *State v. Gross*, 97 Ohio

St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 45. A reviewing court will take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), syllabus.

**{¶88}** As the majority concedes, "[t]here are simply no facts in the record to aid in our mandated de novo review" of the merger issue. *Ante* at ¶ 25. Without facts showing why offenses should merge, this court cannot say that any sentencing error occurred, much less that an error occurred that was so "obvious" that it rose to the level of "plain" error. It is the appellant's responsibility under App.R. 16(A)(7) to make an argument with citations to the parts of the record on which the appellant relies.

**{¶89}** Rogers pleaded guilty to a bare bones indictment. By doing so, he admitted the facts alleged in the indictment. *See* Crim.R. 11(B)(1); *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), paragraph one of the syllabus. He did not argue at sentencing that the offenses he pleaded guilty to were allied and should merge for sentencing, so he forfeited the right to raise anything but plain error relating to merger of sentences. Under any plausible application of the plain error rule, Rogers has failed to show an error, the existence of which we must recognize in order to prevent a miscarriage of justice. On this basis alone, we should reject Rogers's argument that the court committed plain error by failing to merge for sentencing allied offenses of similar import. *See State v. Snuffer*, 8th Dist. Nos. 96480, 96481, 96482, and 96483, 2011-Ohio-6430; *State v. Lindsey*, 8th Dist. No. 96601, 2012-Ohio-804; *State v. Barrett*, 8th Dist. No. 97614, 2012-Ohio-3948; *State v. Rogers*, 8th Dist. Nos. 97093 and 97094, 2012-Ohio-2496.

## II

**{¶90}** The majority circumvents a conventional plain error analysis by taking the *Underwood* holding out of context and relieving the defendant of the onus of objecting and otherwise preserving any claimed error. It does so on the following premises: (1) allied offenses issues invoke the sentencing component of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and constitutional errors cannot be waived unless the waiver is knowing or intelligent; (2) the "imposition of multiple sentences for allied offenses of similar import is plain error"; and (3) under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. From these premises the majority concludes that the trial judge not only has a duty to merge allied offenses of similar import, but that the trial judge also has the obligation to raise the issue of allied offenses at sentencing even if the defendant fails to do so. This conclusion is not valid.

## A

### 1

**{¶91}** Although the majority correctly concludes that Rogers's failure to raise the merger issue at sentencing did not constitute a waiver of his double jeopardy rights, *ante* at ¶ 35, it reaches that conclusion for the wrong reasons because it confuses the concepts of "waiver" and "forfeiture." By failing to raise the issue of merger, Rogers did not waive his double jeopardy rights, but he did forfeit the right to argue anything but plain error on appeal. This distinction is important: nuanced or not.

{¶92} A "waiver" is the intentional relinquishment or abandonment of a right, while a "forfeiture" is the failure to preserve an objection. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23. The waiver of a right is not subject to plain error review under Crim.R. 52(B), but a forfeiture of an objection is subject to plain error review under Crim.R. 52(B). *Id.* Rogers did not intentionally relinquish his double jeopardy rights when he failed to object at sentencing that he was separately sentenced on allied offenses of similar import — he merely forfeited the right to complain of anything but plain error on appeal by not timely raising it. In fact, *Underwood* addressed this very point, rejecting the argument that a guilty plea to a jointly recommended sentence constituted a waiver of the right to raise an allied offense issue on appeal. *Underwood, supra,* at ¶ 32.

2

{¶93} There really is no doubt that a defendant who pleads guilty and does not raise the issue of allied offenses at the time of sentencing forfeits all but plain error on appeal. In *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990), the Supreme Court found an allied offenses argument forfeited on appeal because the defendant did not raise the issue in the trial court. Implicit in the idea of issue forfeiture in the context of allied offenses is that a party who fails to object waives all but plain error. *See State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 139 (argument that state failed to prove separate animus for separate offenses was not raised at trial and defendant "thus waived all but plain error"). Rogers did not waive his right to not be held twice in

jeopardy for the same conduct, but by failing to raise the issue in the trial court, he did forfeit the right to object to this aspect of his sentence.

**{¶94}** *Comen* should end any discussion concerning the application of the plain error rule in this case, yet the majority gives short shrift to that case with the statement that it is "contradicted" by *Underwood*. *Ante* at ¶ 56. This comment is not correct because *Underwood* is entirely consistent with *Comen* — the Supreme Court recognized that Underwood's guilty plea did not waive error; it simply forfeited all but plain error for purposes of appeal. With the state having conceded that Underwood's offenses were allied and should have merged for sentencing, *Underwood* at ¶ 8, the Supreme Court found that the court's failure to merge those sentences rose to the level of plain error.

**{¶95}** Given the concession of plain error in *Underwood,* the Supreme Court had no reason to cite *Comen* for the legal proposition that a failure to raise an allied offenses objection at sentencing forfeits all but plain error. With plain error established, Comen's forfeiture of the right to argue allied offenses was immaterial.

**{¶96}** In fact, the rule that a defendant who fails to raise the issue of allied offenses at sentencing forfeits the right to argue that issue on appeal is so well established that it is axiomatic. For example, in *State v. Antenori*, 8th Dist. No. 90580, 2008-Ohio-5987, we held, consistent with the principles announced in *Comen,* that by voluntarily entering guilty pleas to two separate offenses, a "defendant waive[s] any argument that the same constituted allied offenses of similar import." *Id.* at ¶ 6.

**{¶97}** And in *State v. Wulff*, 8th Dist. No. 94087, 2011-Ohio-700, we distinguished *Antenori* from *Underwood* by noting that *Underwood* involved a jointly recommended sentence as opposed to the guilty plea entered into in *Antenori*. *Id*. at ¶ 25. *Wulff* thus concluded that a defendant who voluntarily enters guilty pleas and allows himself to be sentenced at the court's discretion forfeited any argument that his offenses constituted allied offenses of similar import. *Id*. at ¶ 26.

**{¶98}** Any argument the majority makes that *Underwood* somehow undercut the principles announced in *Comen* should have been dispensed with in *State v. Clementson*, 8th Dist. No. 94230, 2011-Ohio-1798, where the author of the present en banc decision not only agreed with the *Antenori–Wulff* analysis, but explained his agreement by citing with approval the passage from *Antenori* explaining why *Underwood* was distinguishable. *Id*. at ¶ 11. *Clementson* thus denied an application to reopen an appeal on grounds that appellate counsel was ineffective for failing to raise an assignment of error relating to the court's failure to merge allied offenses of similar import for sentencing because that issue arose in the context of a guilty plea and was essentially unreviewable on direct appeal. *Id*. at ¶ 13.

B

**{¶99}** The majority cites *Underwood* for the proposition that it is error to fail to merge allied offenses and from this proposition concludes that a sentence must be reversed if the record on appeal does not contain enough information to prove that offenses are not allied. In its view, holding otherwise might result in the defendant actually being ordered

to serve separate sentences for allied offenses, and that would violate *Underwood*. This conclusion disregards *Comen* and miscomprehends *Underwood's* holding. It is important to understand that in both *Underwood* and *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Supreme Court's holdings were predicated on facts or concessions showing that the trial judge had erred by failing to merge offenses that actually were allied: *Underwood* was the result of a no contest plea and recommended sentence in which the state conceded that Underwood's offenses were allied offenses of similar import; *Johnson* involved a jury trial in which the evidence at trial convincingly showed that the subject offenses were allied. In both cases, the Supreme Court was able to find a merger error that was obvious on the record.

{¶100} The specific holding in *Underwood* that "offenses of similar import must be merged at sentencing or the sentence is contrary to law" is explained by the state's argument in that case. Midway through his trial, Underwood and the state reached a plea agreement in which Underwood would plead guilty to multiple offenses and the parties jointly recommended a sentence. *Underwood, supra,* at ¶ 4. Underwood did not raise the argument to the trial court that any offenses were allied and should have merged, but he did do so on direct appeal. *Id*. at ¶ 6. The state conceded that Underwood's sentences should have merged, but argued that he waived the right to appeal the merger issue by jointly agreeing to a sentence. *Id*. at ¶ 8. Accepting the state's concession regarding merger, the Supreme Court cited past precedent for the proposition that allied offenses are

to be merged at sentencing and found that the trial court's failure to merge Underwood's sentences was plain error.  *Id*. at ¶ 26.

{¶101} With the Supreme Court's finding that the offenses in *Underwood* and *Johnson* were allied, its directive that allied offenses must be merged for sentencing is entirely defensible — it was plainly established that the offenses in each case were allied offenses of similar import, so it would violate double jeopardy to force the defendants in those cases to serve multiple punishments for a single act.   The obvious error in each case was, indeed, plain error.

{¶102} In this case, the majority admittedly has no idea whether Rogers's offenses were allied because Rogers pleaded guilty and failed to make a record to demonstrate his claimed error.   Nothing in *Underwood* suggests that it applies to the *mere possibility* that an allied offenses error occurred.   Applying *Comen*, we should hold that Rogers's failure to preserve error at the time of sentencing forfeited all but plain error and that the limited record on appeal makes it impossible for us to find such an error.

C

{¶103} The majority's final premise — that the court has the responsibility to determine prior to sentencing whether there are any allied offenses issues — imposes a vague standard that the majority actually disregards and creates a new form of structural error.

1

{¶104} In the majority's view, the trial judge has the obligation to address a potential allied offenses issue if the convictions present a "facial" question of merger. *Ante* at ¶ 32. It is unclear what is meant by the use of that word. As a legal term of art, "facial" means obvious or apparent "on its face." But application of this standard actually contradicts the majority's conclusion.

{¶105} The two counts of receiving stolen property involved (1) a "stolen pickup truck" and (2) "tires and rims." The single count of possession of criminal tools involved "a tire jack and/or tow chain and/or lug nut wrenches." As the majority concedes:

> [W]e are unable to determine if these offenses were allied offenses of similar import. It is unclear if the "tires and rims" are from the same "stolen pickup truck" or from another vehicle. Likewise, it is unclear how the tools involved were related to either of the receiving stolen property offenses. There are simply no facts in the record to aid in our mandated de novo review of the issue.

*Ante* at ¶ 25.

{¶106} If this court is unable to determine whether the offenses are allied offenses of similar import because there are no facts to suggest that they are, it has necessarily concluded that there is no "facial" question of merger that obligated the trial judge to inquire into the allied offenses issue. The analysis is at an end. By its own reasoning, the majority's analysis necessarily affirms Rogers's sentences.

{¶107} Rather than apply this new "facial" approach, the majority now adopts a standard that goes beyond the plain error rule and presumes that all offenses are potentially allied and the trial judge must, prior to sentencing, inquire into the possibility that

sentences might be subject to merger, regardless of what facts are before the trial judge — in essence elevating plain error to a form of structural error.

{¶108} It is only in the rarest of cases that an error is held to be structural, thus requiring an automatic reversal. *Washington v. Recuenco*, 548 U.S. 212, 218, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). The United States Supreme Court has been very clear in cautioning against the "unwarranted extension" of the plain error rule because it "would skew the Rule's 'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Indeed, the Supreme Court has stated that it has no authority to create a "structural error exception" to the plain error rule, and that a structural error analysis is inappropriate in a plain error situation. *Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

{¶109} Although the majority carefully avoids characterizing its new rule as "per se" or "structural" error, the intent is clear. The majority explains its decision to place a duty on the court to inquire into the possibility that offenses might merge for sentencing by analogizing allied offenses issues to guilty pleas and claiming that we would "automatically" find plain error if the court failed to advise a defendant of the right to subpoena witnesses under Crim.R. 11(C), regardless of whether the defendant claimed any prejudice. *Ante* at ¶ 58. The difference between plain error and structural error is the

demonstration of prejudice: plain error exists only when the defendant shows that error affected substantial rights (i.e., prejudice); structural error presumes prejudice. *See State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9. By now stating that it would reverse a case even without a showing of prejudice, this court implicitly concedes that it is employing a structural error analysis. It does so with no regard to the Supreme Court's admonition that a structural error analysis is inappropriate in a plain error situation. *Johnson, supra.* At least one other appellate district court has rejected a similar per se error claim in a post-*Underwood* allied offenses appeal from a guilty plea. *See State v. Wessling*, 1st Dist. No. C-110193, 2011-Ohio-5882, ¶ 6.

{¶110} In any event, if the majority insists that it is employing a plain error analysis, the Crim.R. 11(C) guilty plea analogy it uses actually disproves its point. The only way an appellate court would know if a trial judge failed to make the required Crim.R. 11(C) advisements would be if the error was shown on the transcript of the plea colloquy. When there is no transcript of a plea colloquy made available to us, we have invoked established precedent to presume the regularity of the proceedings below and affirm. *See, e.g., State v. Smith*, 8th Dist. No. 94063, 2010-Ohio-3512, ¶ 11-12; *State v. Simmons*, 8th Dist. No. 94982, 2010-Ohio-6188, ¶ 19. So the majority not only fails to make a convincing case for departing from established plain error precedent to create a new form of structural error, it cannot satisfy the plain error test that it says it employs.

{¶111} Although the majority insists that the trial judge has no duty to be an advocate for either the defendant or the state, *ante* at ¶ 27, there is no doubt that its decision effectively requires the court to be more of an advocate for the defendant than defense counsel. It says that defense counsel "should" raise potential merger issues, *ante* at ¶ 38, but that the court "must" raise the issue. *Ante* at ¶ 32. The majority even finds that issues of ineffective assistance of counsel are essentially superseded by the trial judge's "mandated duty to address merger." *Ante* at fn. 2.

{¶112} It is well established that the court has no duty to act sua sponte to preserve the constitutional rights of a defendant who had failed to object to an error. *See, e.g., State v. Abdul Bari*, 8th Dist. No. 90370, 2008-Ohio-3663 (court has no duty to sua sponte dismiss an indictment on speedy trial grounds absent objection); *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 939 (4th Cir.1991) ("Neither *Batson* nor its progeny suggests that it is the duty of the court to act sua sponte to prevent discriminatory exclusion of jurors. Rather, even in criminal cases, the objection is deemed waived if not timely raised.").

{¶113} In criminal cases that terminate by plea agreement, the court usually has no involvement apart from taking the plea and sentencing the defendant. It is unclear why the sentencing judge, who would presumably have less knowledge of the facts than defense counsel, should have the obligation to raise the issue of allied offenses when defense counsel has not done so. Obviously, it is defense counsel's obligation to protect a

defendant's rights.   Competent defense counsel who negotiates a guilty plea will be aware of the facts underlying those offenses to which a defendant pleads guilty.   At all events, it is defense counsel's obligation to advocate for the defendant.   This court's decision essentially forces the trial judge to act as a de facto second chair for the defendant.

3

{¶114} It is disappointing that this court finds inadequate the legal remedies a defendant has for the potential errors that trial counsel makes in failing to raise the issue of allied offenses.   To be sure, it would be difficult on direct appeal to make a viable ineffective assistance of counsel claim stemming from an alleged merger error in a guilty plea.   As this case shows, the nature of guilty plea proceedings are such that the facts necessary to prove the error would be missing.   *See, e.g.*, *State v. Coleman*, 85 Ohio St.3d 129, 134, 707 N.E.2d 476 (1999).   But there are other avenues for raising error.

{¶115} Under R.C. 2953.21, a defendant can seek postconviction relief for the alleged errors of defense counsel that occur outside the record on appeal.   Indeed, the postconviction relief statute is specifically designed for such issues of ineffective assistance of counsel because the petitioner is required to provide facts beyond the record on direct appeal.   *State v. Cooperrider*, 4 Ohio St.3d 226, 228-229, 448 N.E.2d 452 (1983).

{¶116} The majority acknowledges the availability of postconviction relief as a means of remedying defense counsel's failure to raise the issue of allied offenses at sentencing, but apparently finds that the "limited" nature of postconviction makes it a less

than satisfactory remedy. *Ante* at ¶ 52. It is unclear what it means when it says that postconviction relief offers a "limited" remedy. The postconviction statute, R.C. 2953.21(A), applies to constitutional claims of any kind, including ineffective assistance of counsel claims based on alleged violations of the Sixth Amendment to the United States Constitution. In fact, it is the only vehicle for raising ineffective assistance of counsel claims that rely on evidence outside the record on appeal. *See Coleman*, at 134. ("Any allegations of ineffectiveness based on facts not appearing in the record should be reviewed through the postconviction remedies of R.C. 2953.21."). The federal courts usually restrict claims of ineffective assistance, on whatever theory, to postconviction proceedings because the record can be more fully developed. *See Massaro v. United States*, 538 U.S. 500, 504-505, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Spence*, 450 F.3d 691, 694 (7th Cir.2006).

{¶117} Presumably, the majority has no difficulty applying the postconviction relief statute to other forms of constitutional error apart from ineffective assistance of counsel claims. That being so, there is no reason why the postconviction remedies for those kinds of errors are any less limited than the postconviction remedies provided for ineffective assistance of counsel errors, particularly when the Supreme Court has specifically endorsed the postconviction relief statute for use in cases where the record is insufficient to prove a claim of error on direct appeal.

III

**{¶118}** In the end, there is no compelling reason for this court's departure from well-established rules governing plain error. If the court can conclude as a matter of fact or a stipulation that offenses are allied, it must merge those offenses for sentencing as required by *Underwood*. But in guilty plea cases like this one, the absence of any facts showing why offenses are allied and should merge for sentencing means that plain error cannot be shown.

**{¶119}** The majority opinion criticizes application of the plain error rule as a "self-fulfilling prophecy that defeats the constitutional protection outlined in *Underwood*." *Ante* at ¶ 54. But all plain error analysis, regardless of the type of constitutional issue, leads to the same "self-fulfilling prophecy" — if the error is not demonstrated on the record, it is not by definition "plain."

**{¶120}** I agree in principle with the concurring opinion that a trial judge can choose to be more proactive in sentencing and raise potential merger issues in accordance with *State v. Kent*, 68 Ohio App.2d 151, 428 N.E.2d 453 (8th Dist.1980). This could even entail the trial judge refusing to accept a guilty plea unless the parties have agreed in advance on all issues of allied offenses as part of the plea agreement. To be sure, this proactive approach would indeed be the better practice. But that kind of involvement is not required by law and we have no authority to impose it on trial judges.

**{¶121}** This court's decision to reverse this case requires a remand for a hearing, like that suggested in *Kent*. And it does so without guidance for the trial courts.

**{¶122}** A concern with applying *Kent* is that it fails to define the scope of the "voir dire hearing" that a trial judge is supposed to conduct to determine whether offenses are allied and should merge for sentencing. Given the lack of facts typically set forth in the indictment, the voir dire hearing would necessarily require additional fact finding. But the manner in which the court is to decide these facts is unclear and many questions of procedure are left unanswered.

**{¶123}** To illustrate how these questions might arise, suppose a case where the defendant pleads guilty to an indictment charging a rape and kidnapping that occurs on the same day to the same victim. The court accepts the plea, the defendant makes no request that the sentences merge, so the offenses are not merged for sentencing. On appeal, and consistent with this court's new approach that plain error is demonstrated because there is the possibility that the offense might have merged had the issue been raised, the sentence is reversed. On remand, the defendant argues that the two offenses are allied and must merge because they were committed with a state of mind to commit only one act. The state disagrees and theorizes that the defendant's acts were committed separately and should not merge for sentencing. With no agreement of the parties, the court decides to hold a voir dire hearing to resolve the issue. What is the scope of this hearing?

**{¶124}** As a court, we have previously allowed allied offenses issues arising from trials to be determined solely on the arguments of counsel. That procedure is defensible because a trial produces facts from which the court can determine whether individual crimes were allied offenses of similar import. But with remands of guilty plea cases like

this one, there are no facts showing whether offenses are allied. Some form of factual inquiry will be required. If we accept that the arguments of counsel do not constitute evidence, it follows that the parties have the right to offer evidence and call witnesses. That being the case, it appears that the court would have to at least conduct a mini or abbreviated trial. This sort of trial or hearing would be required because the allied offenses issue is one in which the court must determine whether the multiple offenses were committed with a state of mind to commit only one act. I can imagine no other way to determine this other than to hear evidence of the underlying crimes. The irony of having to hold such a trial or evidentiary hearing from a plea agreement is obvious.

{¶125} There are other questions left unanswered by a remand. The Supreme Court has held that the defendant "bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single act." *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). What is the court's standard for finding that offenses are allied offenses of similar import: beyond a reasonable doubt, clear and convincing evidence, or a preponderance of the evidence? Does the defendant have the right to compel witnesses? Can the defendant testify at a voir dire hearing without waiving the Fifth Amendment right against self-incrimination? If new evidence surfaces at the voir dire hearing, does the state have the right to rescind the plea agreement and file additional charges? If requested, does the court have to make findings of fact?

{¶126} There is always the possibility that the parties on remand could stipulate facts beyond those stated in the indictment, but it is unclear why defense counsel would do so. The defendant who has pleaded guilty and been sentenced has nothing to lose and everything to gain by forcing a hearing on allied offenses. In cases like this where there are no facts on the record to show whether offenses are allied, defense counsel is working with a clean slate. Advice to stipulate facts under these circumstances could be a questionable defense strategy and would almost certainly open the door to an ineffective assistance of counsel claim should the court find that merger is warranted.

{¶127} One of the reasons given by one of the concurring opinions in this case is to express concern that this "dissenting opinion may become the law of this state." *Ante* at ¶ 67. With all due respect to the author, this opinion expresses what is already the law of the state (or the state of the law) — at least with regard to plain error jurisprudence. And the unanswered questions about the scope of the proposed voir dire hearing to be conducted on remand should cause this court to pause before abandoning our well-established plain error doctrine and creating a new, expansive rule requiring a remand in all guilty plea cases in which allied offenses could conceivably be, but are not plainly, at issue.

{¶128} Of course, no appellate court can or should try to predict all the possible consequences of a ruling. But having adopted a new rule, this court does a disservice to the trial court by failing to consider the practical consequences of this ruling.

**{¶129}** What this case demonstrates is that the defense — not the court and not the prosecuting attorney — has the ultimate duty to raise any potential allied offenses at the time of sentencing. If the issue is not raised before sentencing, the defendant forfeits all but plain error on appeal. Plain error cannot be established on the mere possibility that a sentencing error occurred, but rather on facts that prove an obvious error. If there are no facts to show that a plain error occurred, the defendant's recourse is in postconviction proceedings.